54

United States Courts
Southern District of Texas
FILED

JAN 3 1 2003

Michael N. Milby, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

MARIA LONGORIA, and MARIA
IDALIA GUTIERREZ, Individually and  }
on behalf of the Estate of          }    CIVIL ACTION NO. B-01-062
JUAN LONGORIA, Deceased             }
                                    }
VS.                                 }
                                    }
CAMERON COUNTY, TEXAS,              }    JURY DEMANDED
THE CITY OF BROWNSVILLE,            }
TEXAS, and JOHN DOES 1-10           }

## PLAINTIFFS' THIRD AMENDED ORIGINAL COMPLAINT

Maria Longoria and Maria Idalia Gutierrez, Individually and on behalf of the Estate of Juan

Longoria, Deceased bring this lawsuit against Cameron County, Texas, the City of Brownsville,

Texas, John Does 1-10, Dr. Khadim Hussain, and Dr. Ian Richardson. This lawsuit arises out of the

beating, choking, and death of Juan Longoria at the hands of the Brownsville Police Department

and/or Cameron County Sheriff's Department as well as the negligent care and medical attention

provided by the Brownsville, Texas Police Department and the Cameron County, Texas Sheriff's

Department. Additionally, this lawsuit is being brought against Dr. Khadim Hussain, and Dr. Ian

Richardson for the negligent medical care and attention of Juan Longoria while at the Brownsville

Medical Center emergency room on or about 10 April 2001. Finally, this lawsuit is also being

brought against Ben Reyna, who was the Chief of Police for the Brownsville Police Department of

the City of Brownsville, Texas during the time period of the incident made the basis of this lawsuit,

Eliborio Rios a/k/a Eli Rios, who was the Jail Administrator with the Brownsville Police

Department of the City of Brownsville, Texas during the time period of the incident made the basis

1

of this lawsuit, Conrado Cantu, Cameron County Sheriff for Cameron County, Texas, Captain Robert Lopez, deputy with Cameron County Sheriff's Department for Cameron County, Texas, and Captain Joe Elizardi, Jail Administrator with the Cameron County Sheriff's Department for Cameron County, Texas.

## PARTIES

1.1    Plaintiff Maria Longoria is an individual residing in Cameron County, Texas. She is the mother of Juan Longoria, Deceased.

1.2    Plaintiff Maria Idalia Gutierrez is an individual residing in the state of Florida. She is the daughter of Juan Longoria, deceased.  She brings this action both on her own behalf and on behalf of the Estate of Juan Longoria, deceased.

1.3    Defendant Cameron County, Texas ("Cameron County" hereinafter) is a political subdivision of the State of Texas.  Said Defendant has filed an answer in this lawsuit.

1.4    Defendant the City of Brownsville, Texas ("Brownsville" hereinafter) is a political subdivision of the State of Texas.  Said Defendant has filed an answer in this lawsuit.

1.5    John Does 1-10 are, upon information and belief, individuals residing in Cameron County, Texas. They are unknown police officers employed by the Brownsville Police Department and the Cameron County Sheriff's Department who beat and choked Juan Longoria.

1.6    Dr. Khadim Hussain is a doctor who may be provided with notice of this lawsuit by serving him with a copy of this lawsuit and a copy of the Scheduling Order at the following address:

2

Brownsville Medical Center, 1040 W. Jefferson, Brownsville, Cameron County, Texas 78520.

1.7     Dr. Ian Richardson is a doctor who may be provided with notice of this lawsuit by serving him with a copy of this lawsuit and a copy of the Scheduling Order at the following address: Brownsville Medical Center, 1040 W. Jefferson, Brownsville, Cameron County, Texas 78520.

1.8     Ben Reyna, who was the Chief of Police for the Brownsville Police Department of the City of Brownsville, Texas during the time period of the incident made the basis of this lawsuit.

1.9     Eliborio Rios a/k/a Eli Rios, who was the Jail Administrator with the Brownsville Police Department of the City of Brownsville, Texas during the time period of the incident made the basis of this lawsuit. Notice of this lawsuit and a copy of the Scheduling Order at the following address is being served upon him at the following address:

        Brownsville Police Department, 600 East Jackson, Brownsville, Texas.

1.10    Conrado Cantu, Cameron County Sheriff for Cameron County, Texas. Notice of this lawsuit and a copy of the Scheduling Order at the following address is being served upon him at the following address:

        954 East Harrison Street, Brownsville, Texas 78520.

1.11    Captain Robert Lopez, Cameron County Sheriff's Department for Cameron County, Texas. Notice of this lawsuit and a copy of the Scheduling Order at the following address is being served upon him at the following address:

        7300 Old Alice Road, Olmito, Texas 78575.

1.12    Captain Joe Elizardi, Jail Administrator with the Cameron County Sheriff's Department for Cameron County, Texas. Notice of this lawsuit and a copy of the Scheduling Order at the following address is being served upon him at the following address:

  7300 Old Alice Road, Olmito, Texas 78575.

## JURISDICTION

2.1    This Court possesses Federal Question jurisdiction because Plaintiff is bringing claims under 42 U.S.C. § 1983.

## VENUE

3.1    Venue is proper in the Southern District of Texas because the acts giving rise to Plaintiffs' cause of action occurred in the Southern District of Texas.

3.2    Venue is proper in the Southern District of Texas because Defendants Cameron County and Brownsville are located in the Southern District of Texas.

## FACTS

4.1    This case arises out of the beating, choking, and death of Juan Longoria, which occurred on or about April 10-12, 2001 as well as the negligent care and medical treatment provided by the Defendants to Juan Longoria.    Additionally, this lawsuit is being brought against Dr. Khadim Hussain, and Dr. Ian Richardson for the negligent medical care and attention of Juan Longoria while at the Brownsville Medical Center emergency room on or about 10 April 2001.

4.2     Plaintiffs do not yet possess knowledge of all of the relevant facts giving rise to this lawsuit. Defendants have given conflicting versions of the facts to Plaintiffs, their family, and the media. Plaintiffs believe that they will only learn the whole truth of what happened to Juan Longoria through the discovery process in this lawsuit.

4.3     Plaintiffs are pleading in the alternative, as permitted by the Federal Rules of Civil Procedure, as to who actually caused the death of Juan Longoria. In their initial investigation, Plaintiffs have received conflicting information: some evidence seems to indicate that Juan Longoria died as a result of being choked by a Brownsville police officer, and other information indicates that he was choked to death by an employee of the Cameron County Sheriff's Department. Plaintiffs hope to learn more facts regarding how Juan Longoria died during discovery and will seek leave to amend this Complaint when more facts are discovered. Additionally, the Plaintiffs assert that Juan Longoria died as a result of the negligent care and medical attention provided by the Brownsville, Texas Police Department and the Cameron County, Texas Sheriff's Department, and said negligence was a proximate cause of the death of Juan Longoria as well as his pain, suffering and mental anguish; additionally, the negligent conduct of the Brownsville Police Department and the Cameron County Sheriff's Department was a proximate cause of the damages sustained by the Plaintiffs.

4.4     On April 10, 2001, Juan Longoria was an individual residing in Brownsville, Texas.

4.5     Juan Longoria had a loving family, including his mother, Maria Longoria, his daughter, Maria Idalia Gutierrez, and his brother.

4.6     On April 10, 2001, Juan Longoria went to a Circle K store in Brownsville, Texas, and he

locked himself into the office of the Circle K store.

4.7     Upon information and belief, Juan Longoria locked himself in the office because he believed that someone was going to kill or injure him.

4.8     An employee of the Circle K store called the Brownsville Police Department, complaining that Juan Longoria would not leave the office.

4.9     Juan Longoria was not injured, bruised, or bleeding when the John Does 1-3, unknown officers of the Brownsville Police Department, arrived at the Circle K.

4.10    Upon arrival at the Circle K store, the city of Brownsville police officers proceeded to arrest Juan Longoria.

4.11    Upon information and belief, Juan Longoria was confused and hallucinating when the police officers began to arrest him.

4.12    The police officers, acting under color of law, beat Juan Longoria, injuring him.

4.13    This beating was unnecessary, excessive, and unwarranted.

4.14    This beating was the direct result of inadequate training and supervision of Brownsville police officers, which was so deficient that it amounted to conscious and deliberate indifference of the rights of the citizens of Brownsville.

4.15    The inadequate training and supervision referenced in paragraph 4.14 constituted a policy, practice, and/or custom of Brownsville Police Department.

4.16    This beating was also the direct result of a culture of violence within the Brownsville Police Department.

4.17    This culture of violence is evidenced by numerous other incidents of police brutality during the last 10 years.

4.18    Pursuant to Federal Rule of Evidence 404(b), Plaintiffs hereby give notice that they intend to offer evidence of these other incidents of police brutality in evidence in the trial of this case.

4.19    After arresting Juan Longoria, the unknown Brownsville Police Department officers roughly placed him in the back of a police car.

4.20    After they placed Juan Longoria in the police car, one of the officers consciously and deliberately, or in the alternative, negligently, slammed the car door on his leg, further injuring him.

4.20    This slamming of the car door on Juan Longoria's leg was also the result of the inadequate training and supervision, as well as the culture of violence, referenced in paragraphs 4.19 to 4.20 above.

4.21    Juan Longoria was arrested for burglary; however, the facts presented to the Brownsville Police Department and John Does 1-3 in no way justified burglary charges. Burglary requires both an unlawful entry, and an intent to commit a burglary, theft, or assault. There was no evidence of such intent.

4.22    While in the City of Brownsville jail, Juan Longoria was taken to a hospital for medical treatment.

4.23    While at the hospital, the medical personnel cleared Mr. Longoria to return back to the City of Brownsville jail facility, however, per the doctor's order, Mr. Juan Longoria was to be kept "under close observation."

4.24    Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was not taken to an infirmary (medical center) at the jail facility.

4.25    Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was not kept under close observation by personnel properly trained to handle Mr. Longoria's medical condition.

4.26    Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was not kept under close observation by the City of Brownsville personnel as required by the doctor.

4.27    Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was placed in a single cell.

4.28    Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was physically restrained with some form of restraining objects.

4.29    Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria did not have his vital signs taken.

4.30    Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, there are no records reflecting that Juan Longoria was  monitored every 15 to 30 minutes.

4.31    Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, the City of Brownsville Police Department personnel did not maintain medical records on Juan Longoria.

4.32    Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, the City of Brownsville Police Department personnel did not report to any doctor or  medical personnel that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself,  that he continued to attempt to hurt himself, and that he had to be restrained.

4.33    Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, the City of Brownsville Police Department personnel did not report to any doctor or  medical personnel that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself,  that he continued to attempt to hurt himself, that he had to be restrained, and that he had to be removed during an arraignment because of his behavior in front of a municipal court judge.

4.34    Juan Longoria was eventually taken to the Cameron County, Texas jail.

4.35    Upon being transferred from the City of Brownsville Police Department jail facility to the Cameron County jail, the City of Brownsville Police Department personnel failed to do the following:

a)    Inform the Cameron County Jail personnel that  Juan Longoria was taken to  a hospital for medical treatment.

b)    Inform the Cameron County Jail personnel that Juan Longoria was to be kept "under close observation" per a doctor's order.

c)    Inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was placed in a single cell.

d)    Inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was physically restrained.

e)    Inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria   did not have his vital signs taken.

f)    Provide the Cameron County Jail personnel with medical records concerning Juan Longoria while Juan Longoria was in custody with the City of Brownsville Police Department.

g)    Inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department,  that Juan Longoria continued to hallucinate

that someone was attempting to kill him, that he continued to talk to himself, that he continued to attempt to hurt himself, that he was placed in a single cell, and that he had to be restrained.

4.36    Due to Defendants' conflicting stories given to the media and to Plaintiffs and their family, Plaintiffs are unable to plead all of the events that took place between the time the Brownsville Police Department arrested Juan Longoria and the time that he was placed in the Cameron County jail.

4.37    From what can be gathered by the Plaintiffs, Juan Longoria was not classified by the Cameron County Jail personnel upon his arrival to the facility. Additionally, Juan Longoria was not provided medical treatment.

4.38    From what can be gathered by the Plaintiffs, Juan Longoria was initially placed with the general population of people being held in the Cameron County Jail.

4.39    Eventually, Juan Longoria was placed in a single cell in the Cameron County jail.

4.40    If Juan Longoria was classified, he was improperly classified; based on the psychological symptoms that, upon information and belief, he was exhibiting, he should have been placed in the infirmary or hospitalized.

4.41    This improper classification was, upon information and belief, the result of the lack of training and/or supervision of the Cameron County Sheriff Department personnel who decided to detain Juan Longoria in a single cell. This lack of training and/or supervision constituted conscious and deliberate indifference, which resulted in harm to Juan Longoria.

11

4.42    Upon information and belief, at approximately 12:15 a.m. on April 12, 2001, Juan Longoria was found dead in his single cell in the Cameron County, Texas jail.

4.43    According to the preliminary autopsy findings, Juan Longoria had two recent fractures of the left side of the hyoid bone, which is in the neck. The final autopsy report states that Juan Longoria died of natural causes.

4.44    According to the preliminary autopsy findings, Juan Longoria's body "had evidence of extremity bruising and neck trauma - the latter suggesting a choke-hold at the time he died."

4.45    According to the preliminary autopsy findings, the "[m]anner of death is probably homicide, most likely asphyxia from a choke hold."

4.46    Juan Longoria's death, and the fracture to his hyoid bone, was not self-inflicted.

4.47    He was alone in the cell, so no other detainee or inmate could have injured or killed him.

4.48    Based on the preliminary autopsy findings, there are only two possible ways that Juan Longoria could have been killed or injured: (a) an employee of the Cameron County Sheriff's Department could have entered his cell, put him in a choke hold, and injured and/or killed him; or (b) one or more officers of the Brownsville Police Department could have placed him in a choke hold, broken his hyoid bone, and he died of the effects of the hyoid fracture while in the Cameron County Jail.

4.49    If Juan Longoria was injured by one or more officers of the Brownsville Police Department choking him, such conduct was the result of the city's failure to adequately train and supervise the

12

officers, as well as the culture of violence present in the Brownsville Police Department.

4.50    If Juan Longoria was injured and/or killed as a result of injuries inflicted upon him by one or more officers of the Brownsville Police Department, the Cameron County Sheriff's Department, and/or one or more of its employees, was consciously and deliberately indifferent to Juan Longoria's medical needs by allowing him to suffocate in his cell rather than having him treated for his injuries.

4.51    If Juan Longoria was injured and/or killed by an employee of the Cameron County Sheriff's Department, such conduct was the result of the failure of Cameron County to adequately train or supervise its employees. This training and supervision was so deficient that it amounted to conscious and deliberate indifference of the rights of the citizens of Cameron County.

4.52    The death of Juan Longoria has caused his family, including Plaintiffs, to suffer great grief and mental anguish.

4.53    Juan Longoria experienced great conscious pain and suffering prior to his death.

4.54    The Longoria family has filed this lawsuit because they believe that the Federal Courts offer the only forum in which they can discover the truth about what happened to Juan Longoria, and in which they can hold those responsible for his death accountable.


## FIRST CAUSE OF ACTION.
### 42 U.S.C. § 1983

5.1    The conduct of Defendants violated Juan Longoria's civil and constitutional rights.

5.2    Defendant City of Brownsville and/or one or more unknown employees of the City of Brownsville violated Juan Longoria's civil rights by arresting him for, and charging him with, burglary, when there was no basis for charging him with burglary.

5.3    Defendant City of Brownsville and/or one or more unknown employees of the City of Brownsville violated Juan Longoria's civil rights by using excessive and unnecessary force in beating him, and in slamming the car door on his legs.

5.4    Employees of either the City of Brownsville or Cameron County violated Juan Longoria's civil rights by choking him, resulting in his death.

5.5    If Juan Longoria died as a result of injuries to his hyoid bone inflicted upon him by one or more employees of the City of Brownsville, one or more unknown employees of Cameron County and/or Cameron County violated his civil rights by failing to properly monitor him and to provide proper and timely medical care. This failure proximately caused his death, and said conduct was a deliberate indifference by the Defendants to the civil rights of Juan Longoria.

5.6    If Juan Longoria died as a result of complications from alcohol withdrawal, then one or more employees of the City of Brownsville and the City of Brownsville, Texas violated his civil rights by failing to properly monitor him and to provide proper and timely medical care. This failure was a proximate cause of his death, and said conduct was a deliberate indifference by the Defendants to the civil rights of Juan Longoria.

5.7    The City of Brownsville, Texas violated Juan Longoria's civil rights by failing to have a policy in place that would properly monitor prisoners suffering from alcohol withdrawal, and to

14

provide proper and timely medical care. This failure was a proximate cause of his death, and said conduct was a deliberate indifference by the Defendants to the civil rights of Juan Longoria.

5.8    The City of Brownsville, Texas violated Juan Longoria's civil rights by failing to have a policy in place that would properly train the city jailers how to monitor prisoners suffering from alcohol withdrawal, and how to provide proper and timely medical care. This failure was a proximate cause of his death, and said conduct was a deliberate indifference by the Defendants to the civil rights of Juan Longoria.

5.9    The City of Brownsville, Texas violated Juan Longoria's civil rights by failing to have a policy in place that would properly train the city jailers how to monitor prisoners that were under doctor's orders to be kept under close supervision, and how to provide proper and timely medical care. This failure was a proximate cause of his death, and said conduct was a deliberate indifference by the Defendants to the civil rights of Juan Longoria.

5.10    Ben Reyna, who was the Chief of Police for the Brownsville Police Department of the City of Brownsville, Texas during the time period of the incident made the basis of this lawsuit, and Eliborio Rios a/k/a Eli Rios, who was the Jail Administrator with the Brownsville Police Department of the City of Brownsville, Texas, during the time period of the incident made the basis of this lawsuit, violated Juan Longoria's civil rights by failing to have a policy in place that would properly monitor prisoners with alcohol problems and to provide proper and timely medical care. This failure was a proximate cause of his death, and said conduct was a deliberate indifference by the Defendants to the civil rights of Juan Longoria.

5.11    Ben Reyna, who was the Chief of Police for the Brownsville Police Department of the City of Brownsville, Texas during the time period of the incident made the basis of this lawsuit, and Eliborio Rios a/k/a Eli Rios, who was the Jail Administrator with the Brownsville Police Department of the City of Brownsville, Texas, violated Juan Longoria's civil rights by failing to have a policy in place that would properly train the city jailers how to monitor prisoners that were under doctor's orders to be kept under close supervision, and how to provide proper and timely medical care. This failure was a proximate cause of his death, and said conduct was a deliberate indifference by the Defendants to the civil rights of Juan Longoria.

5.12    Ben Reyna, who was the Chief of Police for the Brownsville Police Department of the City of Brownsville, Texas during the time period of the incident made the basis of this lawsuit, and Eliborio Rios a/k/a Eli Rios, who was the Jail Administrator with the Brownsville Police Department of the City of Brownsville, Texas, violated Juan Longoria's civil rights by failing to have a policy in place that would properly train the city jailers how to monitor prisoners suffering from alcohol withdrawal, and how to provide proper and timely medical care. This failure was a proximate cause of his death, and said conduct was a deliberate indifference by the Defendants to the civil rights of Juan Longoria.

5.13    Pleading in the alternative, if Juan Longoria died as a result of complications from alcohol withdrawal, then one or more employees of Cameron County and Cameron County, Texas violated his civil rights by failing to properly monitor him and to provide proper and timely medical care. This failure was a proximate cause his death, and said conduct was a deliberate indifference by the Defendants to the civil rights of Juan Longoria.

16

5.14    Having a departmental policy by the Defendants (except Defendants Hussain and Richardson) that allows police officers, deputies, and jailers, who have no medical training beyond first aid to decide whether a detainee warranted medical attention, even after a doctor has given medical instructions to keep an individual under close observation, was a deliberate indifference by the Defendants to the civil rights of Juan Longoria.

5.15    Among other things noted herein, it is the position of the Plaintiffs that the occurrence made the basis of this action and the resulting injuries and damages of the Plaintiffs and Juan Longoria were proximately caused by the deliberate indifference of Ben Reyna, who was the Chief of Police for the Brownsville Police Department of the City of Brownsville, Texas during the time period of the incident made the basis of this lawsuit, and Eliborio Rios a/k/a Eli Rios, who was the Jail Administrator with the Brownsville Police Department of the City of Brownsville, Texas, and the City of Brownsville, Texas and its agents, servants, and officers in the following manner:

a)  Putting Juan Longoria in a jail cell upon being returned to the City of Brownsville Police Department jail facility from the hospital.

b) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, the City of Brownsville Police Department failed to be kept Juan Longoria "under close observation" per the doctor's order.

c) Failing to inform the doctor at the hospital that the City of Brownsville Police Department did not have the ability to keep Juan Longoria under close observation per the doctor's order.

d) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to take Juan Longoria to an infirmary (medical center) at the jail facility.

e) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to

keep Juan Longoria under close observation by personnel properly trained to handle Mr. Longoria's medical condition.

f) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to keep Juan Longoria under close observation by the City of Brownsville personnel as required by the doctor.

g) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to keep Juan Longoria under close observation while he was physically restrained.

h) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to take Juan Longoria's vital signs.

i) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to maintain medical records on Juan Longoria.

j) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to properly monitor Juan Longoria.

k) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, the City of Brownsville Police Department personnel failed to report to any doctor or medical personnel that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself, that he continued to attempt to hurt himself, and that he had to be restrained.

l) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, the City of Brownsville Police Department personnel failed to report to any doctor or medical personnel that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself, that he continued to attempt to hurt himself, that he had to be restrained, and that he had to be removed during an arraignment because of his

18

behavior in front of a municipal court judge.

m)  Failing to properly train its employees concerning the  correct manner to handle a medical condition similar to that of Juan Longoria.

n)   Failing to inform the Cameron County Jail personnel that  Juan Longoria was taken to the hospital for medical treatment.

o)  Failing to inform the Cameron County Jail personnel that Juan Longoria was to be kept "under close observation" per a doctor's order.

p)  Failing to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was placed in a single cell.

q)   Failing to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was physically restrained.

r)   Failing to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria  did not have his vital signs taken.

s)  Failing to provide the Cameron County Jail personnel with medical records concerning Juan Longoria while Juan Longoria was in custody with the City of Brownsville Police Department.

t)   Failing to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department,  that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself, that he continued to attempt to hurt himself, that he was placed in a single cell, and that he had to be restrained.


5.16    Each of the above-described civil rights violations were the direct result of policies, customs, and/or practices or the lack thereof  by  Ben Reyna, who was the Chief of Police for the Brownsville

19

Police Department of the City of Brownsville, Texas during the time period of the incident made the basis of this lawsuit, and Eliborio Rios a/k/a Eli Rios, who was the Jail Administrator with the Brownsville Police Department of the City of Brownsville, Texas, and the Defendant City of Brownsville.

5.17    Among other things noted herein, it is the position of the Plaintiffs that the occurrence made the basis of this action and the resulting injuries and damages of the Plaintiffs and Juan Longoria were proximately caused by the deliberate indifference of Ben Reyna, who was the Chief of Police for the Brownsville Police Department of the City of Brownsville, Texas during the time period of the incident made the basis of this lawsuit, and Eliborio Rios a/k/a Eli Rios, who was the Jail Administrator with the Brownsville Police Department of the City of Brownsville, Texas, and the City of Brownsville, Texas and its agents, servants, and officers in the following manner:

a)  Having a policy or procedure or lack thereof that allowed putting Juan Longoria in a jail cell rather than an infirmary upon being returned to the City of Brownsville Police Department jail facility from the hospital.

b) Having no policy or procedure or training within the City of Brownsville Police Department jail facility on how to be kept a prisoner "under close observation" per the doctor's order.

c) Having a policy or procedure or lack thereof that allowed the City of Brownsville Police Department jail facility to use personnel not properly trained to handle Mr. Longoria's medical condition.

d) Having a policy or procedure or lack thereof that allowed the City of Brownsville Police Department jail facility to keep Juan Longoria physically restrained and not be monitor by medically trained personnel.

e) Having a policy or procedure or lack thereof that allowed the City of Brownsville Police Department jail facility not to take Juan Longoria's vital signs after being returned from

the hospital.

f) Having a policy or procedure or lack thereof that allowed the City of Brownsville Police Department jail facility not to maintain medical records/medical chart on Juan Longoria when he was returned from the hospital.

g) Having a policy or procedure or lack thereof that allowed the City of Brownsville Police Department jail facility not to report to any doctor or medical personnel that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself, that he continued to attempt to hurt himself, and that he had to be restrained after he was returned from the hospital.

h) Failing to properly train its employees concerning the correct manner to handle a medical condition similar to that of Juan Longoria.

i)    Having a policy or procedure or lack thereof that allowed the failure to inform the Cameron County Jail personnel that Juan Longoria was taken to the hospital for medical treatment.

j)    Having a policy or procedure or lack thereof that allowed the failure to inform the Cameron County Jail personnel that Juan Longoria was to be kept "under close observation" per a doctor's order.

k)    Having a policy or procedure or lack thereof that allowed the failure to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was placed in a single cell.

l)    Having a policy or procedure or the lack thereof that allowed the failure to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was physically restrained.

m)    Having a policy or procedure or the lack thereof that allowed the failure to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria did not have his vital signs taken.

n)    Having a policy or procedure or the lack thereof that allowed the failure to provide the

Cameron County Jail personnel with medical records or a medical chart concerning Juan Longoria while Juan Longoria was in custody with the City of Brownsville Police Department.

o)   Having a policy or procedure or the lack thereof that allowed the failure to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself, that he continued to attempt to hurt himself, that he was placed in a single cell, and that he had to be restrained.

5.18    Each of the above-described civil rights violations were the direct result of policies, customs, and/or practices or the lack thereof by Ben Reyna, who was the Chief of Police for the Brownsville Police Department of the City of Brownsville, Texas during the time period of the incident made the basis of this lawsuit, and Eliborio Rios a/k/a Eli Rios, who was the Jail Administrator with the Brownsville Police Department of the City of Brownsville, Texas, and the Defendant City of Brownsville.

5.19    Additionally, it is the position of the Plaintiffs that the occurrence made the basis of this action and the resulting injuries and damages of the Plaintiffs and Juan Longoria were proximately caused by the deliberate indifference of Conrado Cantu, Cameron County Sheriff for Cameron County, Texas, and Captain Robert Lopez, deputy with Cameron County Sheriff's Department for Cameron County, Texas, and Captain Joe Elizardi, Jail Administrator with the Cameron County Sheriff's Department for Cameron County, Texas, and Cameron County, Texas and its agents, servants, and officers in the following manner:

a) Failure of the Cameron County Sheriff's Department to be kept Juan Longoria "under

22

close observation" per the doctor's order.

b) Failing to inform the doctor at the hospital that the Cameron County Sheriff's Department did not have the ability to keep Juan Longoria under close observation per the doctor's order.

c) Failure of the Cameron County Sheriff's Department to take Juan Longoria to an infirmary (medical center) at the jail facility.

d) Failure of Cameron County Sheriff's Department to take Juan Longoria's vital signs.

e) Failure of Cameron County Sheriff's Department to maintain medical records on Juan Longoria.

f) Failure of Cameron County Sheriff's Department to properly monitor Juan Longoria.

g) Failure of the Cameron County Sheriff's Department to report to any doctor or medical personnel that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself, and that he continued to attempt to hurt himself.

h) Failure of Cameron County Sheriff's Department to properly train its employees concerning the correct manner to handle a medical condition similar to that of Juan Longoria.

i) Failure of the Cameron County Sheriff's Department to follow its health services plan.

j) Failure to classify Juan Longoria by the Cameron County Jail personnel upon his arrival to the facility.

k) The placing of Juan Longoria initially with the general population of people being held in the Cameron County Jail.

l) If Juan Longoria was classified, he was improperly classified; based on the psychological symptoms that, upon information and belief, he was exhibiting, he should have been placed in the infirmary or hospitalized.

m) This improper classification was, upon information and belief, the result of the lack of training and/or supervision of the Cameron County Sheriff Department personnel who decided to detain Juan Longoria in a single cell. This lack of training and/or supervision constituted negligence, and conscious and deliberate indifference, which resulted in harm to Juan Longoria.

n) If Juan Longoria was injured by one or more officers of the Cameron County Sheriff's

Department choking him, such conduct was the result of the city's failure to adequately train and supervise the officers; said failure to adequately train and supervise was negligent and said negligence was a proximate cause of Juan Longoria's injuries and damages as well as those of the Plaintiffs.

o)  If Juan Longoria was injured and/or killed as a result of injuries inflicted upon him by one or more officers of the Cameron County Sheriff's Department, and/or one or more of its employees, then the Cameron County Sheriff's Department was negligent as well as consciously and deliberately indifferent to Juan Longoria's medical needs by allowing him to suffocate in his cell rather than having him treated for his injuries.

p)  If Juan Longoria was injured and/or killed by an employee of the Cameron County Sheriff's Department, such conduct was the result of the failure of Cameron County to adequately train or supervise its employees. This training and supervision was so deficient that it amounted to negligence and conscious and deliberate indifference of the rights of the citizens of Cameron County, Texas.

q)  Having a departmental policy that allows police officers who have no medical training beyond first aid to decide whether a detainee warranted medical attention, even after a doctor has given medical instructions to keep an individual under close observation.

r)  Use of the jail cell.


5.20   Each of the above-described civil rights violations was the direct result of policies, customs, or practices or the lack thereof of the Defendant Cameron County, Texas.


5.21   Each of the above-described civil rights violations proximately caused damages and/or death to Juan Longoria and to Plaintiffs, and said conduct was a deliberate indifference by the Defendants to the civil rights of Juan Longoria.     Each of the above-described civil rights violations was the direct result of policies, customs, or practices or the lack thereof of the Defendants (except Defendants Hussain and Richardson).

5.22    Defendants, and their employees, are not entitled to qualified immunity for the above-described civil rights violations. The actions giving rise to these violations were in bad faith, and violated Juan Longoria's clearly established Constitutional rights, including the Fourth Amendment, the Eight Amendment, Due Process and the right to be free from excessive force.

## SECOND CAUSE OF ACTION.
## NEGLIGENCE BY CITY OF BROWNSVILLE, TEXAS

6.1    The Plaintiffs assert that the City of Brownsville, Texas employee(s) was/were in the course and scope of their/his/her employment for the Defendant City of Brownsville, Texas at the time of the incident made the basis of this lawsuit.

6.2    The Texas Civil Practice & Remedies Code, Title 5 (Governmental Liability) states that a municipality is liable for damages arising from its governmental functions including police and fire protection and control, and the establishment and maintenance of jails.   Texas Civil Practice & Remedies Code, Title 5, Chapter 101, Subchapter B, section 101.0215.

6.3    The Texas Civil Practice & Remedies Code, Title 5 (Governmental Liability) also states that "a governmental unit in the state is liable for personal injury and death so caused by a condition or use of tangible personal or real property if the government unit would, were it a private person, be liable to the claimant according to Texas law."   Texas Civil Practice & Remedies Code, Title 5, Chapter 101, Subchapter B, section 101.021.

6.4    The Plaintiffs bring their claim against the City of Brownsville  in accordance with the provisions set forth in the Texas Civil Practice & Remedies Code, Title 5 (Governmental Liability).

6.5    Under the Texas Tort Claims Act, Defendant Brownsville is liable for this negligence.

6.6    Plaintiffs have delivered notice to Defendant Brownsville as required by the Texas Tort Claims Act.  Alternatively, the Defendant Brownsville had actual notice of the incident giving rise to the lawsuit.

6.7    The City of Brownsville, Texas was negligent and its negligence was a proximate cause of Plaintiffs' injuries and damages.

6.8    The City of Brownsville, Texas has no governmental or official immunity.

6.9    Among other things, it is the position of the Plaintiffs that the occurrence made the basis of this action and the resulting injuries and damages of the Plaintiffs were proximately caused by the negligence of the City of Brownsville, Texas and its agents, servants, and officers in the following manner:

   a)  Putting Juan Longoria in a jail cell upon being returned to the City of Brownsville Police Department jail facility from the hospital.

   b) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, the City of Brownsville Police Department failed to be kept Juan Longoria "under close observation" per the doctor's order.

   c) Failing to inform the doctor at the hospital that the City of Brownsville Police Department did not have the ability to keep Juan Longoria under close observation per the doctor's order.

d) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to take Juan Longoria to an infirmary (medical center) at the jail facility.

e) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to keep Juan Longoria under close observation by personnel properly trained to handle Mr. Longoria's medical condition.

f) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to keep Juan Longoria under close observation by the City of Brownsville personnel as required by the doctor.

g) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to keep Juan Longoria under close observation while he was physically restrained.

h) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to take Juan Longoria's vital signs.

i) Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to maintain medical records on Juan Longoria.

27

j)  Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, failing to properly  monitor Juan Longoria.

k)  Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, the City of Brownsville Police Department personnel failed to report to any doctor or  medical personnel that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself,  that he continued to attempt to hurt himself, and that he had to be restrained.

l)  Upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, the City of Brownsville Police Department personnel failed to report to any doctor or  medical personnel that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself,  that he continued to attempt to hurt himself, that he had to be restrained, and that he had to be removed during an arraignment because of his behavior in front of a municipal court judge.

m)  Failing to properly train its employees concerning the  correct manner to handle a medical condition similar to that of Juan Longoria.

n)    Failing to inform the Cameron County Jail personnel that  Juan Longoria was taken to the hospital for medical treatment.

28

o)  Failing to inform the Cameron County Jail personnel that Juan Longoria was to be kept "under close observation" per a doctor's order.

p)  Failing to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was placed in a single cell.

q)  Failing to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria was physically restrained.

r)  Failing to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department, Juan Longoria  did not have his vital signs taken.

s)  Failing to provide the Cameron County Jail personnel with medical records concerning Juan Longoria while Juan Longoria was in custody with the City of Brownsville Police Department.

t)  Failing to inform the Cameron County Jail personnel that upon being returned to the City of Brownsville Police Department jail facility from the hospital, and while in custody with the City of Brownsville Police Department,  that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself, that he continued to attempt to hurt himself, that he was placed in a single cell, and that he

29

had to be restrained.

u) One or more employees of Defendant Brownsville were negligent in slamming the door of the patrol car onto Juan Longoria's leg. As a direct and proximate result of this negligence, Juan Longoria suffered damages.

v) Having a departmental policy that allows police officers who have no medical training beyond first aid to decide whether a detainee warranted medical attention, even after a doctor has given medical instructions to keep an individual under close observation.

6.10    Each of the above acts or omissions, or a combination of them, constituted negligence and proximately caused the occurrence made the basis of this action.

6.11    The Defendant City of Brownsville has been given notice concerning the incident made the basis of this lawsuit, whether it be by letter or actual notice, in accordance with the Texas Civil Practice and Remedies Code and/or Texas Tort Claims Act.

6.12    All conditions precedent have been met by the Plaintiffs prior to the filing of this lawsuit against the Defendant City of Brownsville, Texas.

## THIRD CAUSE OF ACTION.

### NEGLIGENCE BY

**Conrado Cantu, Cameron County Sheriff for Cameron County, Texas, and Cameron County, Texas**

7.1    The Plaintiffs assert that the Cameron County, Texas  employee(s) was/were in the course

and scope of their/his/her employment for the Defendant Cameron County at the time of the incident made the basis of this lawsuit. The Plaintiffs assert that employee(s) of Conrado Cantu was/were in the course and scope of their/his/her employment for the Defendant at the time of the incident made the basis of this lawsuit.

7.2     The Texas Civil Practice & Remedies Code, Title 5 (Governmental Liability) states that "a governmental unit in the state is liable for personal injury and death so caused by a condition or use of tangible personal or real property if the government unit would, were it a private person, be liable to the claimant according to Texas law." Texas Civil Practice & Remedies Code, Title 5, Chapter 101, Subchapter B, section 101.021.

7.3     Article 16.21 of the Texas Code of Criminal Procedure provides that "every sheriff shall keep safely a person committed to his custody."

7.4     In 1975 the Texas Legislature created the Jail Standards Commission. The Texas Commission on Jail Standards is required to establish rules and regulations governing, among other things, medical care in jails. See 37 Tex. Admin. Code, section 273.1 (Texas Commission on Jail Standards, Health Services). Under rule 273.1, the County "shall provide medical, mental, and dental services in accordance with the approved health services plan. These services may include, but shall not be limited to, the services of a licensed physician, professional and allied health personnel, hospital, or similar services."

7.5     Under Rule 273.2 of the Jail Standards, the County is required to put into force a written plan, approved by the Commission on Jail Standards, for inmate medical, mental, and dental services. See 37 Tex. Admin. Code, Part 9, Chapter 273, Rule section 273.2 (Texas Commission on

31

Jail Standards, Health Services).

7.6    Under Rule 273.3 of the Jail Standards, "all medical instructions of designated physicians shall be followed." See 37 Tex. Admin. Code, Part 9, Chapter 273, Rule section 273.3 (Texas Commission on Jail Standards, Health Services, Health Instructions).

7.7    Under Texas Local Government Code Annotated, section 351.001, the commissioners' court shall provide safe and suitable jails for the county. Tex.Loc.Gov't Code Ann. section 351.001.

7.8    Under Texas Local Government Code Annotated, section 351.001, "each county jail must comply with the minimum standards and rules and procedures of the Commission on Jail Standards."

7.9    The Plaintiffs bring this negligent cause of action against the Defendant Cameron County and Defendant Conrado Cantu based upon the provisions set forth above.

7.10    The County of Cameron, Texas  and  Sheriff Conrado Cantu have no governmental or official immunity.

7.11    Among other things, it is the position of the Plaintiffs that the occurrence made the basis of this action and the resulting injuries and damages of the Plaintiffs were proximately caused by the negligence of Cameron County, Texas, and Sheriff Conrado Cantu and their agents, servants, and officers in the following manner:

a) Failure of the Cameron County Sheriff's Department to be kept Juan Longoria "under close observation" per the doctor's order.

b) Failing to inform the doctor at the hospital that the Cameron County Sheriff's

32

Department did not have the ability to keep Juan Longoria under close observation per the doctor's order.

c) Failure of the Cameron County Sheriff's Department to take Juan Longoria to an infirmary (medical center) at the jail facility.

d) Failure of Cameron County Sheriff's Department to take Juan Longoria's vital signs.

e) Failure of Cameron County Sheriff's Department to maintain medical records on Juan Longoria.

f) Failure of Cameron County Sheriff's Department to properly monitor Juan Longoria.

g) Failure of the Cameron County Sheriff's Department to report to any doctor or medical personnel that Juan Longoria continued to hallucinate that someone was attempting to kill him, that he continued to talk to himself, and that he continued to attempt to hurt himself.

h) Failure of Cameron County Sheriff's Department to properly train its employees concerning the correct manner to handle a medical condition similar to that of Juan Longoria.

i) Failure of the Cameron County Sheriff's Department to follow its health services plan.

j) Failure to classify Juan Longoria by the Cameron County Jail personnel upon his arrival to the facility.

k) The placing of Juan Longoria initially with the general population of people being held in the Cameron County Jail.

33

l) If Juan Longoria was classified, he was improperly classified; based on the psychological symptoms that, upon information and belief, he was exhibiting, he should have been placed in the infirmary or hospitalized.

m)  This improper classification was, upon information and belief, the result of the lack of training and/or supervision of the Cameron County Sheriff Department personnel who decided to detain Juan Longoria in a single cell. This lack of training and/or supervision constituted negligence, and conscious and deliberate indifference, which resulted in harm to Juan Longoria.

n) If Juan Longoria was injured by one or more officers of the Cameron County Sheriff's Department choking him, such conduct was the result of the city's failure to adequately train and supervise the officers; said failure to adequately train and supervise was negligent and said negligence was a proximate cause of Juan Longoria's injuries and damages as well as those of the Plaintiffs.

o)  If Juan Longoria was injured and/or killed as a result of injuries inflicted upon him by one or more officers of the Cameron County Sheriff's Department, and/or one or more of its employees, then the Cameron County Sheriff's Department was negligent as well as consciously and deliberately indifferent to Juan Longoria's medical needs by allowing him to suffocate in his cell rather than having him treated for his injuries.

p)  If Juan Longoria was injured and/or killed by an employee of the Cameron County Sheriff's Department, such conduct was the result of the failure of Cameron County to

adequately train or supervise its employees. This training and supervision was so deficient that it amounted to negligence and  conscious and deliberate indifference of the rights of the citizens of Cameron County, Texas.

q)  Having a departmental policy that allows police officers who have no medical training beyond first aid to decide whether a detainee warranted medical attention, even after a doctor has given medical instructions to keep an individual under close observation.

r)  Use of the jail cell.

7.12    Each of the above acts or omissions, or a combination of them, constituted negligence and/or negligence per se, and proximately caused the occurrence made the basis of this action.

7.13    The Defendant Cameron County, Texas has been given notice concerning the incident made the basis of this lawsuit, whether it be by letter or actual notice, in accordance with the Texas Civil Practice and Remedies Code and/or Texas Tort Claims Act.

7.14    All conditions precedent have been met by the Plaintiffs prior to the filing of this lawsuit against the Defendant Cameron County, Texas.

## FORTH  CAUSE OF ACTION.
### NEGLIGENCE BY
### DR. KHADIM HUSSAIN AND  DR. IAN RICHARDSON

8.1    As state earlier in this complaint, the deceased Juan Longoria was taken to the Brownsville Medical Center emergency room by the Brownsville Police Department on or about 10 April 2001,

35

for medical treatment.   According to the medical records the medical treatment was provided Dr. Khadim Hussain and Dr. Ian Richardson.   The history notes that Juan Longoria was, among other things, complaining of elbow pain and he had abrasions to his knee.   Additionally, he appeared to be very nervous, he was hallucinating, he was hearing voices, and he claimed that people were trying to kill him.   During his examination by one or both of the doctors, it was recommended that Juan Longoria be submitted to a psychological consult and drug screen.   Mr. Longoria was evaluated mentally by a State of Texas governmental agency and his drug screen came back negative.   The mental evaluation did not note anything remarkable.   The Defendant doctors thereafter authorized that Juan Longoria may return to the jail, but per a written doctor's order, Juan Longoria was to be kept under close observation.   Upon leaving the hospital, the police for the City of Brownsville were provide with instructions on how to care for a wound and a sprain.   The police for the City of Brownsville were not provided by the doctors with any instructions on what was to be done in accordance with the doctor's order of "to be kept under close observation." The diagnosis of the doctors was contusions.   The doctors did not consider that Juan Longoria was suffering from alcohol withdrawal.   As noted earlier in this petition, Juan Longoria was later found dead in the Cameron County jail.


8.2    The defendants Khadim Hussain and Ian Richardson violated the duty of care to the deceased Juan Longoria by their failure to exercise the ordinary care and diligence as other physicians would have done in the same or similar circumstances, and these Defendants  were negligent during the course of their treatment in one or more of the following particulars:

    a.    By failing to diagnosis that Juan Longoria was suffering from alcohol withdrawal.

    b.    By allowing Juan Longoria to return to the jail when his medical condition warranted

further medical care.

c.    By failing to provide instructions to the patient and/ the police officers as to what is meant by "to be kept under close observation."

Each and every one of the foregoing acts and omissions, taken separately and collectively, constitute a direct and proximate cause of the injuries and damages described below.

8.3    As a direct and proximate result of these Defendants' acts and omissions, Juan Longoria died. The Plaintiffs bring this lawsuit and seek damages as allowed under the Texas Tort Claims Act, a Wrongful Death Action under Texas law (Texas Civil Practice and Remedies Code, Chapter 71), and a Survival Action under Texas law (Texas Civil Practice and Remedies Code, Chapter 71). The Plaintiffs bring suit against these Defendants for damages within the jurisdictional limits of this Court.

## DAMAGES

9.1    As a direct and proximate result of Defendants' tortious and illegal conduct, as set forth above, Juan Longoria suffered conscious pain, suffering, and mental anguish prior to his death. His estate also incurred funeral expenses. Therefore, Plaintiff Maria Idalia Gutierrez, on behalf of the Estate of Juan Longoria, seeks to recover for these items of damage.

9.2    As a direct and proximate result of the death of Juan Longoria, which was brought about by the tortious and illegal conduct of one or more Defendants, Plaintiffs have suffered past and future damages, including loss of parental captainship, advice, counsel, care, attention, instruction, society, guidance, love, affection, emotional support, solace, comfort, happiness, as well as mental pain,

suffering, anguish, grief, and sorrow.

9.3     The Plaintiffs bring this lawsuit and seek damages (as well as exemplary damages) as allowed under Federal law for civil rights violations, the Texas Tort Claims Act, a Wrongful Death Action under Texas law (Texas Civil Practice and Remedies Code, Chapter 71), and a Survival Action under Texas law (Texas Civil Practice and Remedies Code, Chapter 71).

9.4     Plaintiffs also seek to recovery attorneys' fees and expert fees under Federal law.

9.5     Plaintiffs also seek to recover prejudgment interest, post judgment interest, and costs of court.

9.6     Plaintiffs also seek to recover exemplary and punitive damages against those Defendants which the law permits.

9.7     Plaintiffs seek actual damages in the amount of at least $600,000.00, and exemplary damages in the amount of at least $1,000,000.00.

## JURY DEMAND

10.1    Plaintiffs demand a jury trial.

## PRAYER

For these reasons, the Plaintiffs ask upon final hearing that they recover judgment, jointly and severally, against all of the Defendants for the following:

a.  Damages in the amount of at least $600,000.00, and exemplary damages in the amount of at least $1,000,000.00.

b.  Prejudgment and postjudgment interest as allowed by law.

c.  Costs of suit.

d.   Attorneys' fees as allowed by law.

e.  All other relief as the Court deems appropriate.

Respectfully submitted,

By: _____

Alfred R. Valdez
Federal ID 6389
State Bar No. 20426200
7520 Hillcroft
Houston, Texas 77081
(713) 271-0719
(713) 270-8134 fax
Attorney for the Plaintiffs

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on the opposing party on
31 Jan. 2003.

_____
Alfred R. Valdez

39

**UNITED STATES DISTRICT COURT**          **SOUTHERN DISTRICT OF TEXAS**

Maria Longoria etal

§
§

*versus*
§          CIVIL ACTION  B- 01-062
§
§

Cameron County, Texas,
The City of Brownsville,
et al.
§

United States District Court
Southern District of Texas
ENTERED

SEP 1 9 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

Scheduling Order

1. Trial: Estimated time to try: 5-6 days.                    ☐ Bench    ☒ Jury

2. New parties must be joined by:                              Jan. 31, 2003
   *Furnish a copy of this scheduling order to new parties.*

3. The plaintiff's experts will be named with a report furnished by:    May 30, 2003

4. The defendant's experts must be named with a report furnished
   within 30 days of the deposition of the plaintiff's expert.         July 30, 2003

5. Discovery must be completed by:                                     Sept. 30, 2003

   *Counsel may agree to continue discovery beyond the deadline, but there will be no intervention by the court.*
   *No continuance will be granted because of information acquired in post-deadline discovery.*

**********************************The Court will provide these dates**********************************

6. Dispositive Motions will be filed by:                              10/30/03

7. Joint pretrial order is due:                                       12/22/03
   *(The plaintiff is responsible for filing the pretrial order on time.)*

8. Docket Call and final pretrial conference is set for 1:30 p.m. on:    1/8/04

9. Jury Selection is set for 9:00 a.m. on:                            1/12/04
   *(The case will remain on standby until tried.)*

   Signed September 19, 2002, at Brownsville, Texas.

A. R. Valley → PLT.

Eileen Leeds City Brownsville

Roger Hughes Cameron County

Hilda G. Tagle
United States District Judge