IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JUN 2 9 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| MARIA LONGORIA, and MARIA IDALIA GUTIERREZ, Individually and on behalf of the Estate of JUAN LONGORIA, Deceased, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. B-01-062 |
| CAMERON COUNTY, TEXAS, THE CITY OF BROWNSVILLE, TEXAS, and JOHN DOES 1-10 | § § § § | |
| Defendants | | |

## ORDER

BE IT REMEMBERED, that on June 28, 2004, the Court considered Defendant, Cameron County's, Motion for Summary Judgment [Dkt. No. 73] and the response and reply thereto. The Court **GRANTS** Cameron County's motion for summary judgment.

### I. Uncontroverted Factual and Procedural Background

The Brownsville Police Department (hereinafter, "BPD") arrested Juan Longoria for the burglary of a Circle K store in Brownsville, Texas. According to police reports, on April 10, 2001, Longoria entered the Circle K store carrying a bloody hammer and began ransacking the store manager's office. When the BPD arrived, Longoria barricaded himself in the office and resisted arrest until the BPD officers carried him to the police car. BPD officers then transported Longoria to the Brownsville Municipal jail. While in the police car, Longoria made claims that someone was trying to kill him.

After placing Longoria in a holding cell at the Brownsville Municipal jail, the BPD officers took him to the Brownsville Medical Center (hereinafter "BMC") for a medical evaluation because Longoria was behaving erratically, appearing to be scared and nervous, trembling, and hallucinating ("seeing things"). Before the BPD officers took

Longoria to the hospital, Longoria again reported that men wanted to kill him.

At the BMC, Longoria was treated for an injured knee, and his elbow was x-rayed. While in the emergency room, an employee of Tropical Texas for Mental Health and Mental Retardation evaluated Longoria, and determined he was "malingering." As a result, Longoria was released. As demonstrated by the evidence submitted by Defendant, the emergency room physician also recommended that Longoria be placed under close observation.

The next morning, April 11, 2001, Longoria was arraigned and transferred to the Cameron County Sherif's Department Jail (hereinafter "CCSD Jail"). At intake, the BPD officer who transported Longoria described Longoria as mentally ill and provided CCSD Jail officers with Longoria's medical records from the Brownsville Medical Center. After intake, a Cameron County Health Department nurse examined Longoria, but she did not observe anything remarkable about Longoria. For a reason unclear from the evidence presented, the CCSD Jail booking and classification procedures were never completed for Longoria.

Longoria was initially placed in a large holding cell, but within an hour he was moved to a single padded cell for his protection when other prisoners complained of his loud behavior, which included Longoria's repeated claims that he had been shot and Longoria's repeated reference to the news the night before, which he claimed reported his shooting. The CCSD Jail Operations Plan requires that "inmates with mental difficulties displaying violent or irrational behavior" . . . "be housed in a single cell where he/she can be monitored by a correctional officer." The plan also requires that jail personnel check and supervise mentally disabled patients in single cells in time increments ranging between thirty to five minute intervals, depending on the inmate's risk. Both CCSD Jail officers and medical personnel conduct this monitoring.

Although CCSD Jail procedures also call for a log to be kept near the inmate's cell door indicating the times and specific observations of each monitoring, CCSD Jail officers did not follow this procedure in Longoria's case. It is, therefore, uncontroverted that a monitoring log was not maintained for Longoria, and the medical nursing staff had never been notified that Longoria was placed in the single cell. Instead, CCSD Jail

officials merely observed Longoria through the window in his cell door as they passed through that area of the jail. Additionally, inmates in nearby cells, and an inmate delivering food to Longoria's cell observed him in his cell.

Longoria continued to exhibit strange behavior, including yelling and tapping on the walls, until about 11:30 p.m. Plaintiffs present evidence that an inmate observed Longoria quivering while in the single cell. At approximately 11:30 p.m., CCSD Jail officers noticed that Longoria was not moving. When the officers initially entered the cell, some suspected that Longoria was pretending to be asleep. Upon reentering the cell with back-up officers, CCSD Jail officers decided to call a staff nurse and the EMS. When the nurse examined Longoria, he determined that he had no pulse or respiration.

The medical autopsy eventually concluded that Longoria died from complications of delirium tremons (the "DT's"), caused by alcohol withdrawal, and cirrhosis of the liver and end-stage liver disease. A preliminary autopsy indicated that Longoria might have been choked, but Plaintiffs have abandoned this claim in their response to Cameron County's motion for summary judgment. Additionally, Defendants presented unrefuted evidence that Plaintiffs stipulated that Longoria's death did not result from a chokehold or strangulation, as Plaintiffs originally alleged based on the preliminary autopsy report.

Plaintiffs originally sued the City of Brownsville, Cameron County, and individual Brownsville and CCSD Jail officers for Juan Longoria's death, alleging claims under (1) 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments, and (2) state tort law claims under the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code § 101.001 et seq. Plaintiffs have since settled with the City of Brownsville. Additionally, some time ago, Plaintiffs sought leave from the Court to add negligence claims against Drs. Khadim Hussain and Ian Richardson. The Court granted Plaintiffs leave to amend their complaint and add these parties. The Court notes, however, that no return of service was ever filed with the Court as executed, nor have these parties filed answers. Plaintiffs also previously sought leave to add certain individual CCSD officers, which the Court denied as futile for Plaintiffs' failure to allege constitutional violations committed by those specific named individuals. Cameron County now moves for summary judgment on all Plaintiffs' claims.

## II. Summary Judgment Standard

Summary Judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual controversies, if any exist, are resolved in favor of the nonmoving party. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). *See also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery documents that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case"). *See also Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999). Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," *Celotex Corp.*, 477 U.S. at 327, the party "need not negate the elements of the nonmovant's case." *Little*, 37 F.3d at 1075 (*citing Celotex*, 477 U.S. at 323).

If the moving party meets this burden, the non-movant then must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Little*, 37 F.3d at 1071 (*citing Celotex*, 477 U.S. at 325). "Unsubstantiated assertions" or "mere allegations or denials" will not adequately cast doubt on material facts at issue. *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994). *See also* Fed. R. Civ. P. 56(e). Likewise, the nonmovant must present more than a mere "scintilla" of evidence. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). The evidence must be viewed in the light most favorable to the nonmovant. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228 (5th Cir. 2003); *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000). Summary Judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Little*, 37 F.3d at 1071.

### III. Cameron County's Liability Under 42 U.S.C. § 1983

**A.    Adoption of a Policy or Inadequate Training with Deliberate Indifference**

Liability for municipalities and entities such as county governments may attach under 42 U.S.C. § 1983 only if the plaintiff demonstrates a deprivation of a constitutional right that was inflicted pursuant to an official policy or custom. *See Board of the County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Counties are contemplated as "municipalities" for the purpose of section 1983 liability. Municipal liability requires proof of "1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (2003) (*citing Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001), *cert. denied*, 534 U.S. 820 (2002)).

Governmental liability does not arise vicariously though the acts of its employees, thus to prove liability under § 1983, Plaintiffs must show that Cameron County adopted a policy with deliberate indifference to the likelihood of a constitutional violation. *See Monell v. Dept. Of Social Srvs.*, 436 U.S. 658, 694 (1978); *Piotrowski*, 237 F.3d at 578-80. However, a municipality may be liable for the actions of those municipal or county officials who have "final policy making authority."*Praprotnik*, 108 S.Ct. at 924. State law governs whether a particular official has final policy making authority. *Id. See also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Plaintiffs have presented no evidence or arguments concerning final policy makers.

Plaintiffs may also prove governmental liability by showing that Cameron County, through its policymaker, had inadequate training procedures; the policymaker was deliberately indifferent in adopting the training policy'; and the inadequate training policy directly caused Longoria's death. *See Cozzo v. Tangipahoa parish* Council, 279 F.3d 273, 286-87 (5th Cir. 2002); *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). Plaintiffs may prove deliberate indifference by showing either that Cameron County consciously chose not to train officers after being on notice that its current regimen had failed to prevent misconduct and injuries, or by providing evidence of a single incident with proof

of the possibility of recurring situations that presents an obvious potential for violations of constitutional rights and the need for training. *See Conner v. Travis County*, 209 F.3d 794, 797 (5th Cir. 2000); *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000), *en banc reh. denied,* 211 F.3d 127 (5th Cir. 2000).

Plaintiffs provide no evidence that Cameron County adopted a policy that led to Longoria's death. Plaintiffs also fail to show that Cameron County inadequately trained its employees. Instead, Plaintiffs present the Court with approximately 22 pages of testimonial summaries that discuss the care Longoria received while he was kept in the CCSD jail. Although this evidence may address the indifference of specific officers to Longoria's medical needs or Longoria's condition, Plaintiffs provide absolutely no evidence that the indifference was the result of *policy*. In fact, Plaintiffs admit in their arguments, and present evidence in the form of deposition testimony, that Cameron County had procedures in place that would have prevented Longoria's death, had these procedures been followed. According to Plaintiffs' own arguments, it was the CCSD Jail officers' failures to follow specified procedures in this particular instance that contributed to or caused Longoria's death. Indeed, Plaintiffs' evidence shows there was a custom and practice of following these procedures. Additionally, Cameron County offers substantial evidence of the training given to CCSD Jail officers. Many of the officers were certified, and Plaintiff submitted evidence that "detention officers receive training at the academy, as well as on the job instruction and training of someone being [sic] in medical distress." Pls' Response to Defendant's Motion for Summary Judgment, at p. 7. Plaintiffs offer no evidence that this training was inadequate, much less that the training was done with deliberate indifference. Further, given this Circuit's general rejection of single incidents as a sufficient basis to hold a governmental unit liable, Longoria's death, though tragic, is not sufficient proof of the possibility of recurring situations presenting a need for training. *See Cozzo*, 279 F.3d at 288; *see also Conner*, 209 F.3d at 797.

Amazingly, in the 23 pages Plaintiffs devote to responding to Defendant's Motion for Summary Judgment and Cameron County's section 1983 liability, they cite to only one case, *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003). In *Austin*, Plaintiffs

alleged two officers, in their individual capacities, were deliberately indifferent to the victim's medical needs. *See id.* at 210. After conducting a qualified immunity analysis, the Court in *Austin* determined the officers in fact "both knew of and disregarded an excessive risk" to the victim, which was sufficient to state a claim for deliberate indifference to serious medical needs. *See id.* As Defendant points out, the Court's determination in Austin focused on the time period after the victim had fallen unconscious in the summer heat–that is, the hours that passed while the school officials delayed summoning medical attention. *Austin* did not, however, discuss the liability at issue in this case –whether Cameron County as a municipal entity was liable under section 1983. The case cited by Plaintiffs, therefore, is inapposite. For the reasons stated above, this portion of Cameron County's motion for summary judgment is **GRANTED**.

**B.    Ratification of a Policy, Custom, or Practice with Deliberate Indifference**

To prove that a policy, custom, or practice of Cameron County caused the deprivation of Longoria's constitutional rights, Plaintiffs must show a pattern of similar incidents that is general or widespread that fairly represents CCSD Jail policy. *See Cozzo*, 279 F.3d at 289; *see also Languirand v. Hayden*, 717 F.2d 220, 227-28 (5th Cir. 1983); *cert. denied*, 467 U.S. 1215 (1984). Such a pattern is evident if there are numerous prior incidents showing a systematic violation of constitutional rights. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984), *cert. denied*, 427 U.S. 1016 (1985). Plaintiffs must show that Cameron County knew or had constructive knowledge of the practice and tolerated the practice with deliberate indifference. *See Piotrowski*, 237 F.3d at 579-581. Finally, the systematic pattern of prior incidents must have affirmatively caused Longoria's death. *See Reimer v. Smith*, 663 F.2d 1316 (5th Cir. 1981).

Plaintiffs offer no evidence of prior incidents that would give rise to a pattern. In fact, there is ample evidence in the record indicating that Longoria's case was unique and that the failure to follow CCSD Jail policy in this case was an abnormality. Plaintiffs' failure to provide evidence of other instances of harm undercuts their deliberate indifference claim against Cameron County. *See Cozzo*, 279 F.3d at 288;

*see also Conner*, 717 F.3d at 797. Thus, this portion of Cameron County's motion for summary judgment is **GRANTED**.

### C. Deliberate Indifference to Longoria's Need for Medical Attention

As Longoria was a pre-trial detainee, Plaintiffs' allegations that CCSD Jail officers were deliberately indifferent to Longoria's medical needs must be grounded on Fourteenth Amendment Due Process claims of failure to protect and the denial of medical care. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643 (5th Cir. 1996). When the claim is based upon an officer's episodic act, as is the case here, Plaintiffs must prove that the officer acted with deliberate indifference and "breached his constitutional duty to tend to the basic human needs of the persons in his charge." *Id.* at 645. Neither negligent inaction nor gross negligence by the officer violates due process rights. *See id.* Rather, the CCSD Jail officer must have subjective knowledge of a substantial risk of serious medical harm, but have responded with deliberate indifference to that risk. *Id.* at 650; *see also Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). Once Plaintiffs have met this burden, however, they must then prove that the CCSD Jail officer's actions resulted from a Cameron County policy or custom adopted or maintained with objective deliberate indifference to Longoria's constitutional rights. *See Hare*, 74 F.3d at 649 n.4; *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992).

Even assuming Plaintiffs have provided sufficient evidence that CCSD Jail officers acted with deliberate indifference toward Longoria's need for medical care, and the Court does not make such a finding now, Plaintiffs still fail to demonstrate Cameron County is liable based on its policy or custom. Instead, Plaintiffs discuss only that several inmates told the CCSD Jail officers that Longoria looked very ill and that he had gone from acting erratic, quivering, and looking like "a fish out of water" to not moving at all. CCSD Jail officers acknowledge that they were aware of Longoria's dramatic shift in behavior, but they ignored Longoria because they thought he was faking illness or sleeping. CCSD Jail officers also knew that a Brownsville Medical Center doctor recommended that Longoria be kept under close supervision. Despite this knowledge, CCSD officers failed to take action.

Plaintiffs have failed completely to show, or even discuss in their response to Defendant's motion for summary judgment, whether the CCSD Jail officers'[1] actions were the result of a Cameron County policy or custom adopted or maintained with objective deliberate indifference to Longoria's constitutional rights. The Court notes that it has found no evidence in the record to support such a conclusion. Thus, this portion of Cameron County's motion for summary judgment is **GRANTED**.

**D.   Use of Excessive Force**

There is no competent evidence that CCSD Jail officers used excessive force to beat and choke Longoria to death. Further, by completely failing to address the excessive force claim, and in light of the stipulations mentioned earlier in this order, the Court determines Plaintiffs have failed to sustain this claim in their response to Cameron County's motion for summary judgment. Thus, this portion of Cameron County's motion for summary judgment is **GRANTED**.

**IV. Cameron County's Liability on Texas State Law Negligence Claims**

Under Texas law, a governmental entity is immune from tort liability unless the legislature has waived immunity. *See Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998) (*citing Harris County v. Dillard*, 883 S.W.2d 166, 168 (Tex. 1994)). Plaintiffs bring their negligence cause of action under section 101.021 of the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code § 101.001 *et seq.* This section of the Act states,

A governmental unit in the state is liable for:

---

[1] In their Third Amended Complaint, Plaintiffs name John Does as "unknown police officers employed by the Brownsville Police Department and the Cameron County Sheriff's Department who beat and choked Juan Longoria." Third Amended Cmplt., ¶ 1.5 [Dkt. No. 54]. As the Court discussed in its September 4, 2003, order, Plaintiffs never adequately named individual officers of Cameron County who allegedly violated Longoria's due process rights based on their deliberate indifference. This decision, therefore, merely addresses the claims against Cameron County, as Plaintiffs never pled claims individually against officers of Cameron County. *See* September 4, 2003, Order, at p. 6 [Dkt. No. 64] (denying Plaintiffs' request to add Captain Robert Lopez and Captain Joe Elizardi as parties because the allegations against these individuals were brought only in their official capacities as Plaintiffs never alleged these officers failed to develop or employ certain policies or that they personally violated the decedent's constitutional rights).

>(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:
>
>(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
>(B) the employee would be personally liable to the claimant according to Texas law; and
>
>(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would were it a private person, be liable to the claimant according to Texas law.

To apply the limited waiver of immunity set forth in the Texas Tort Claims Act, Plaintiffs must show that Longoria's death was caused by Cameron County's use of or the condition of tangible personal or real property that would make the county liable if it were a private person. Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 1997); see *Bossley*, 968 S.W.2d at 341 (TEX. 1998). The Supreme Court of Texas has held that the property must be more than merely involved in bringing about the injury. Stated differently, "[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible." *Bossley*, 968 S.W.2d at 343 (*citing Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995)). For example, in *Bossley*, the Court held that although unlocked doors permitted the patient's escape and triggered a sequence of events that led to his death, "the use and condition of the doors were too attenuated from [the decedent's] death to be said to have caused it." 968 S.W.2d at 343.

Plaintiffs have not alleged that the use or condition of real or personal property caused the death of Juan Longoria. Although Plaintiffs assert Longoria was placed in a jail cell, they do not allege the use or condition of the cell caused his death. Nor do they allege the use or condition of restraints caused his death. *Cf. Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528 (Tex. 1975) (holding that immunity was waived under section 101.021(2) where Plaintiffs alleged injury after a patient fell out of a hospital bed that lacked side rails because the injury was directly related to the lack of restraints on the bed). Cases such as these are limited and apply "to claims in which a

Plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiffs' injuries." *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996).

Plaintiffs' allegations in this case do not fall into the above category of cases. Plaintiffs contend that the window on Longoria's cell was too small to allow for proper observation by CCSD Jail officers as they walked by Longoria's cell. However, the use of tangible property does not cause injury if it merely furnishes the condition that makes injury possible. *See Bossley*, 968 S.W.2d at 341. In this case, the window was not a direct cause of Longoria's death. CCSD Jail officers were aware of Longoria's condition the entire time he was in his cell. Nothing about the cell or the cell window directly, or even indirectly, led to Longoria's death.

Furthermore, the failure of employees to take certain actions, such as the failure to monitor, supervise, or keep a log of Longoria's condition and observations of his condition, or the failure to detect a medical condition or failure to administer treatment does not constitute a use of tangible property that satisfies the immunity waiver. *Cf. Kerrville State Hosp.*, 923 S.W.2d at 585 (failure to provide specific form of medication not actionable); *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) (failure to provide medication is a non-use of property and does not constitute an actionable claim).

Plaintiffs do argue in their response, however, that their claims involve negligence in implementing an already existing policy, which is not barred by sovereign immunity. *See Texas Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001). The Court agrees with the Defendant's interpretation of this case–the waiver of immunity applies to the negligent implementation of policy *only* if "'the death or injury involved did not arise from the use or condition of tangible personal property or from the operation or use of a motor-driven vehicle.'" *University of Tex. Health Science Ctr. at San Antonio v. Bruen*, 92 S.W.3d 24, 28 (Tex. App.–San Antonio 2002, pet. denied) (citations omitted). Therefore, "[e]ven assuming [Plaintiffs'] claim was for the negligent implementation of policy and procedure, [Plaintiffs] still [have] failed to state a claim for which governmental immunity is waived under the TTCA." *Id.*

Thus, this portion of Cameron County's motion for summary judgment is

11

**GRANTED**.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant, Cameron County's Motion for Summary Judgment [Dkt. No. 73].

DONE at Brownsville, Texas, this 28th day of June, 2004.

Hilda G. Tagle
United States District Judge